# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SOUTH CAPITOL BRIDGEBUILDERS, a joint venture composed of Archer Western Construction, LLC and Granite Construction Company, | |
| Plaintiff, | No. 20-CV-3894 |
| v. | Judge Mary M. Rowland |
| LEXINGTON INSURANCE, | |
| Defendant. | |

## MEMORANDUM OPINION & ORDER

South Capitol Bridgebuilders ("South Capitol") brings this breach of contract action alleging that Lexington Insurance Company ("Lexington") denied Plaintiff's insurance claim improperly and in bad faith. Lexington filed a motion to transfer this action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a), (Dkt. 16), requested leave to submit additional documents in support of the motion to transfer. (Dkt. 25). The motion for leave to submit additional documents is granted. For the reasons stated herein, Defendant's motions to transfer jurisdiction is also granted.

## BACKGROUND

The Plaintiff, South Capitol, is a joint venture comprised of two partners, Archer Western Construction, LLC and Granite Construction Company.[1] Archer

---

[1] All facts referenced in this Order are from the Complaint and the exhibits thereto unless otherwise specified.

Western's members are all citizens of Illinois, making the LLC itself an Illinois citizen.[2] Granite Construction is a corporation and a California citizen. South Capitol was convened for the purpose of contracting with the city of Washington DC to demolish and reconstruct the Frederick Douglass Memorial Bridge, and it maintains an office in the District of Columbia for that purpose. (Dkt. 17, Ex. 4). South Capitol's corporate headquarters is in Chicago, however.

Lexington, the Defendant, is a Delaware insurance company with its primary offices in Massachusetts. It issued South Capitol a policy covering the Frederick Douglass Memorial Bridge project. That insurance policy was negotiated by South Capitol representatives in Chicago and a copy of the contract was delivered to the Plaintiff there. The policy covers "loss of or damage to" insured property including "all costs rendered necessary by defects of material workmanship, design, plan, specification and should damage [. . .] occur to any portion of the Insured Property." (Dkt. 1, ¶ 16–19).

South Capitol began reconstruction of the Frederick Douglass Memorial Bridge in 2017. It poured concrete into molds to support steel arches in 2019. When the molds were removed, however, the concrete had pockets of air. The air pockets undermined the structural integrity of the concrete supports, which need to be replaced before construction can continue.

South Capitol filed a claim with Lexington, seeking coverage of the costs associated with repairing and rebuilding the concrete structures. Lexington's New

---

[2] The Archer Western employee who filed the insurance claim, Jack Slattery, resides in Florida.

2

York-based claim administrator worked with a New York adjusting firm, Charles Taylor Adjusting, and DeSimone Consulting Engineers, a New York engineering firm, (Dkt. 17, Ex. 1 at 4; Ex. 3), to investigate the claim and determine the cause and magnitude of South Capitol's losses. The engineers and adjusters interviewed South Capitol employees on site in the District of Columbia. (Dkt. 17, 4). DeSimone determined that the pockets of air in the concrete structures formed when the concrete was poured, likely because the workmen on site failed to adequately vibrate the concrete immediately after it was poured into the mold. (Dkt. 1, ¶ 39)

On April 9, 2020, Lexington denied the claim. Its denial letter stated that "the mere existence of a defect in components [. . .] does not render such components 'damaged'" and that "[i]n order to sustain direct physical loss or damage, insured property must be in an initially satisfactory state and then changed by some external event into an unsatisfactory state." (Dkt. 1, Ex. 3 at 5). South Capitol filed suit in the Northern District of Illinois.

## ANALYSIS

Lexington requests that the Court transfer the case pursuant to § 1404(a) which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transferring a case is appropriate when "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *Nalco Co. v. Envtl.*

3

*Mgmt., Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010) (citing 28 U.S.C. § 1404(a)). The party moving for transfer has the burden of establishing that their proposed forum is clearly more convenient. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). "District courts have broad discretion to grant or deny" such a motion. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010).

The parties agree that venue is proper in the Northern District of Illinois and in the District of Columbia. (Dkt. 17, 5; Dkt. 23, 4). The Court now considers whether transfer would serve the convenience of parties and witnesses, and whether it would serve the interest of justice. These considerations are often referred to as the "private interest factors" and the "public interest factors." *See, e.g., Karp v. Silver Arch Cap. Partners, LLC*, No. 20 CV 0139, 2021 WL 492872, at *1 (N.D. Ill. Feb. 10, 2021).

### A. Private Interest Factors

When considering the convenience of the parties and witnesses, courts take into account factors such as (1) "the plaintiff's initial choice of forum;" (2) "the relative ease of access to sources of proof;" (3) access to witness and witness attendance at proceedings in light of "the availability of compulsory process" and "the costs of obtaining the attendance of witnesses;" (4) "the situs of material events;" and (5) "the convenience of the parties." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *Westchester Fire Ins. Co. v. Zurich Am. Ins. Co.*, No. 13 CV 2207, 2014 WL 1018115, at *6 (N.D. Ill. Mar. 12, 2014). While these

4

factors are useful, § 1404(a) "permits a flexible and individualized analysis and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation, Inc.*, 626 F.3d at 978 (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

1. *Plaintiff's Choice of Forum*

South Capitol chose the Northern District of Illinois both because that is the headquarters of one of its two affiliates, Archer Western Construction, and because that affiliate negotiated the insurance contract in Chicago. This factor weighs in favor of denying the motion to transfer. However, there is some dispute as to how much weight the plaintiff's choice of forum should be given. *Compare Dunn v. Soo Line R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994) ("plaintiff's choice in selecting forum is entitled to substantial weight") *with Black & Decker Corp. v. Vermont Am. Corp.*, 915 F. Supp. 933, 938 (N.D. Ill. 1995) ("a plaintiff's choice of forum must be given some weight"). Moreover, "the weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim." *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995); *see also Evangelical Lutheran Church v. Atl. Mut. Ins.* Co., 973 F. Supp. 820, 822 (N.D. Ill. 1997) ("[W]hen the events giving rise to the cause of action took place elsewhere, the weight granted to the plaintiffs' choice of forum is diminished significantly."). The events giving rise to this action took place in the District of Columbia, so the importance of this factor is diminished.

2. *Access to Sources of Proof*

The parties disagree about the nature of the action and therefore disagree about what the "sources of proof" will be if this case proceeds. Lexington argues that the case will turn on facts related to that basis of its decision to deny coverage and will involve the activity at the site of the construction (*e.g.*, whether the concrete supports were functional and integrated into the rest of the bridge before they were damaged, or whether they were defective from the start.) (Dkt. 1, Ex. 3 at 4). South Capitol argues that the only issue is one of contract interpretation. Assuming South Capitol is correct, this factor still does not weigh heavily in favor of keeping the case in the Northern District of Illinois. The contract can be accessed anywhere. If, however, Lexington is correct and the interpretation of the contract depends on facts related to the construction of the bridge, this factor weighs slightly in favor of transfer to the District of Columbia.

3. *Attendance of Witnesses*

Courts have noted that "[t]he convenience of witnesses is often viewed as the most important factor" in the private interest evaluation. *See, e.g. Westchester Fire*, No. 13 C 2207, 2014 WL 1018115, at *6 (citing *Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998) and *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill.1989)).

Based on the initial disclosures produced by each party, only one potential witness, Archer Western attorney Grant Peoples, lives in Illinois. (Dkt. 26, Exs. 1–3). The majority are construction professionals who were interviewed by Lexington's

agents in the course of their investigation and are located in the District of Columbia, including Eric Hayes, project manager for Plaintiff. Lexington's claim administrator and adjuster are located in New York and Texas. This factor counsels in favor of transfer.

    4. *Situs of Material Events.*

The parties disagree about where the material events in this case took place. In terms of strict contract construction, the policy was negotiated by South Capitol employees in Chicago. However, the property covered by the policy is located in Washington DC and the events that are determinative of whether the property sustained "direct physical loss or damage" meaning whether it was "initially [in] satisfactory state and [was] then changed by some external event into an unsatisfactory state" took place in Washington DC.

In cases where an insurance company seeks a declaratory judgment asserting it has no duty to defend a policy holder, courts often consider the situs to be "the forum where the insurance policy has been solicited, negotiated, delivered, and executed." *See, e.g., Hartford Cas. Ins. Co. v. Topsail Sportswear, Inc.*, No. 10 C 1507, 2010 WL 2757556, at *2 (N.D. Ill. July 8, 2010) (citing *St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, No. 05 CV 5484, 2006 WL 1543275, at *2 (N.D. Ill. June 1, 2006)); *Hartford Fire Ins. Co. v. Eagle Equity Serv.*, No. 9 CV 7091, 2010 WL 2541978, at *2 (N.D. Ill. June 17, 2010). In these actions, however, courts were considering the forum where the contract was negotiated and the forum where the underlying action (which the insurer is being asked to defend) was filed, which was not necessarily the

7

location where the insured property or entity was located. *See Hartford Cas. Ins. Co.*, No. 10 CV 1507, 2010 WL 2757556, at *2; *St. Paul Fire & Marine Ins. Co.,* No. 05 CV 5484, 2006 WL 1543275, at *3; *Hartford Fire Ins. Co.,* No. 9 CV 7091, 2010 WL 2541978, at *9. Based on the claim denial letter attached to the Complaint, Lexington determined the repairs were not covered because the concrete structures were not properly functioning components of the bridge before they became defective. Analyzing this determination may require factfinding that goes beyond the four corners of the insurance contract. For purposes of change of venue analysis, this is a neutral factor.

5. *Convenience of the Parties*

The Northern District of Illinois is presumably the more convenient venue for South Capitol, since the partnership maintains its primary office in this district. Neither South Capitol nor Lexington has given the Court reason to believe that the District of Columbia would be a similarly convenient venue, since neither party has a primary office there (although South Capitol has a secondary office in the District of Columbia). This factor weighs in favor of denying the motion to transfer.

Overall, the private interest factors weigh slightly in favor of granting Lexington's motion to transfer this case to the District of Columbia.

**B. Public Interest Factors**

Next, the Court considers public interest factors such as (1) relative "docket congestion and likely speed to trial;" (2) "each court's relative familiarity with the relevant law;" (3) "the respective desirability of resolving controversies in each

8

locale;"; and (4) "the relationship of each community to the controversy." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted); *see also Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, 240 F. Supp. 3d 848, 853 (N.D. Ill. 2016). These public interest factors "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id*.

1. *Docket Congestion*

In 2020, 394 civil cases were filed per judge in the Northern District of Illinois, while only 249 were filed per judge in the District of Columbia. (Dkt. 17, Ex. 5). During that timeframe each Illinois judge had an average of 712 cases pending, while District of Columbia judges had an average of 356. *Id*. Because of these disparities, on average cases in the Northern District of Illinois are resolved 11.2 months after filing, while cases in the District of Columbia are resolved after only 5.3 months. *Id*. This factor weighs in favor of transfer to the District of Columbia.

2. *Familiarity with the Relevant Law*

"In a diversity action it is [. . .] considered advantageous to have federal judges try a case who are familiar with the applicable state law." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). The parties disagree about which forum's law will be applied to this case, so before weighing this factor the Court must determine what the applicable law is likely to be.

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–

9

97 (1941). If a case is transferred from one federal district court to another pursuant to § 1404, the transferee court applies the transferor court's choice of law rules, so whether or not this case is transferred, Illinois choice of law rules will apply. *See Coffey*, 796 F.2d at 221.

When adjudicating insurance coverage disputes, "Illinois courts employ a 'most significant contacts' test to determine the governing substantive law for the contract." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). This test considers the several factors including "the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Id.* (citing *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill. 2d 520, (1995)). However, "[w]hile all these factors must be considered in the choice of law analysis, *the location of the insured risk* is given special emphasis." *Jupiter Aluminum Corp.*, 225 F.3d at 873 (emphasis added) (citing *Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill.*, 268 Ill. App. 3d 655 (1994) and Restatement (Second) of Conflict of Laws § 193 (1971) for this proposition and holding that Indiana law applied to an insurance contract protecting property located in Indiana, despite the fact that both the insurance broker and the policy holder were Illinois corporations, and that the insurance contract was negotiated and signed in Illinois).

Here, the subject matter of the insurance contract is located in the District of Columbia, the contract was delivered in Illinois, the insured and the insurer are

10

domiciled in California, Illinois, Delaware and Massachusetts, the place of the last act to give rise to a valid contract is Illinois, and the places bearing a rational relationship to the contract are the District of Columbia and Illinois. However, because the location of the insured risk is given special emphasis, the contract law of the District of Columbia may apply. For purposes of the change of venue analysis, this public interest factor is neutral.

3. *Local Interest and Relationship of the Community to the Controversy*

The Court considers the third and fourth public interest factors together. South Capitol argues, without citing any case law, that Illinois has the greatest local interest in this dispute, because its partners are citizens of Illinois and California, and it is "based" in Illinois. It argues that the District of Columbia has no interest in this case because it is not a party to this case. This is unpersuasive. The District of Columbia is not just the *location* of the insured property, it is also the eventual *owner* of the insured property: the bridge. If South Capitol is unable to recover the cost of reconstructing the bridge from Lexington it may delay completion of the bridge or increase the cost of construction. *See, e.g., Essex Ins. Co. v. Dimucci Dev. Corp. of Ponce Inlet, Inc.*, No. 14 CV 7234, 2015 WL 1137648, at *3 (N.D. Ill. Mar. 10, 2015) (granting motion to transfer to Florida and noting that "Florida also has a strong interest in the interpretation of insurance coverage over construction of residential buildings within its state."). This factor weighs strongly in favor of transfer.

The public interest factors weigh in favor of transferring the case to the District of Columbia.

## **CONCLUSION**

Lexington's motion to transfer (Dkt. 16) is granted. The Clerk is directed to transfer the case to the United States District Court for the District of Columbia forthwith. Defendant's motion for leave to submit additional documents (Dkt. 25) is granted. Civil case terminated.

E N T E R:

Dated: April 15, 2021

*/s/ Mary M. Rowland*

MARY M. ROWLAND
United States District Judge